GRANT MOTORS, INC., et al. v. FEDERAL CREDIT CO.

(Division A. Dec. 12, 1938.)

[185 So. 196. No. 33420.]

L. Barrett Jones, of Jackson, for appellants.

Harold Cox, of Jackson, for appellee.

877

**McGowen, J.,** delivered the opinion of the court.

Appellee, Federal Credit Company, brought an action at law to recover from Grant Motors, Inc., and Leon Gober $765.72, with interest. The case was tried upon an agreed statement of facts before the court, without the intervention of a jury, and judgment was entered for the appellee for said sum against the appellants, who prosecuted an appeal to this court.

The case was tried upon the following agreed statement of facts: "That Grant Motors, Inc., in the regular operation of its business as an automobile sales establishment became and is indebted unto the plaintiff on the matters in suit in the full amount of $765.72, with six per cent. interest thereon from the respective maturity dates thereof, after the allowance of all credits due it; and that said Grant Motors, Inc., became so indebted to the plaintiff at the time and in the manner hereinafter detailed.

"That said indebtedness arose under and by virtue of the sale by assignment with recourse from and on Grant Motors, Inc., to Federal Credit Company of various conditional sales contracts, evidencing the balance due on the purchase price of automobiles sold by Grant Motors, Inc., to various purchasers who signed said contracts; that in each case, the purchaser who desired to buy such automobile on the deferred payment plan executed such contract with Grant Motors, Inc., as the local dealer in Jackson Mississippi, and said local dealer promptly on the date of each contract, assigned and discounted such instrument to the Federal Credit Company by executing the dealer's assignment and warranty and the dealer's guarantee, all of which appears on the reverse side of the conditional sales contract form used in each instance involved in this case, a copy of which said contract and said endorsements thereon being made a part hereof as Exhibit 'A' hereto;

"That in addition thereto, the said Grant Motors Inc.,

executed to and with the Federal Credit Company a contract for the sale and purchase of all of such conditional sales contracts so discounted to said finance company, and on the reverse side thereof appears what it denominated as the 'Dealer's Protection Agreement,' a copy of which said instrument is made a part hereof as Exhibit 'B' hereto;

"That Grant Motors, Inc., was engaged in the business of selling new and used automobiles and in servicing and repairing new and used automobiles in an establishment on Pearl Street in Jackson, Mississippi, at the time of the execution of each note, and at the time of the assignment of said note to the Federal Credit Company; that said company likewise operated a general repair shop and parts and accessory establishment in connection with said business, and that said business was so conducted by said dealer until on or about December 24, 1936.

"That in the Course and conduct of said business that Grant Motors, Inc., sold certain automobiles to certain purchasers on the time payment plan, and that such deferred balance were in each case secured by a retention of title to the automobile sold to secure amount, and said contracts were on the dates and in the amounts shown sold, assigned, guaranteed and delivered to the Federal Credit Company by Grant Motors, Inc., the particulars whereof are more specifically made to appear by Exhibit 'C' hereto;

"That on December 24, 1936, Grant Motors, Inc., sold all of its tools, shop equipment, machinery, appliances and merchandise in bulk to the defendant, Leon Gober, for the sum of $1750.00, which is the agreed fair and reasonable value thereof; and it is further agreed that said merchandise sold was of the character that comes within the purview of the Bulk Sales Law, and that the same was sold in bulk without in any manner, or to any extent, complying with section 3353, Mississippi Code 1930, commonly known as the 'Bulk Sales Law.' "

When the Grant Motors, Inc., sold motor cars, it took the Federal Credit Company's conditional sales contract for balance on unpaid purchase money in which there was the retention of title for the unpaid balance. On the back thereof was printed a dealer's assignment and warranty without recourse save as to untrue representations or breach of warranty, which all referred to the sale between the purchaser of the car from Grant Motors, Inc. There was also printed on the back of the conditional sales contract a dealer's guaranty, in which the dealer, Grant Motors, Inc., guaranteed the purchaser of the conditional sales contract, the Federal Credit Company, the payment of all deferred installments specified therein promptly if and when due, and further guaranteed that if the purchaser from Grant Motors, Inc., of the motor car, failed to pay any installment or perform any requirement, the Grant Motors, Inc., would pay the full amount of balance due on that contract to the Federal Credit Company, conceding to the Federal Credit Company a waiver of any indulgence, compromise, settlement, or other like action on its part in dealing with the purchaser. The notes of the several purchasers in favor of appellant were by it transferred to appellee without recourse.

There was also a contract by which the Federal Credit Company agreed to purchase the conditional sales contracts taken by Grant Motors, Inc., in the course of its business in which the dealer, Grant Motors, Inc., made these agreements: (a) If such car is returned to dealer within 90 days after a default in payment which has continued for such period, it is understood that the Dealer will pay Federal Credit Company upon demand, and in any event, within 30 days of its return to dealer, the amount of the remaining unpaid balance due Federal Credit Company on the obligation.

"(b) If returned more than 90 days after a default in payment which has continued for such period, it is understood that the Dealer will pay Federal Credit Com-

pany upon demand and in any event, within 30 days of its return to Dealer, the value of the car, as is, at the time it is returned. Value will be determined as provided in Appraisal Clause of Standard Fire-Theft Policies.

"(c) If Federal Credit Company is by law obliged to hold a car for redemption for a period exceeding 10 days or if litigation involving a seizure or repossession occurs, it is understood that upon return of the car after the termination of either such period the Dealer shall pay Federal Credit Company upon demand the amount of the remainder unpaid balance due Federal Credit Company on the obligation and that the preceding paragraph 'b' shall not apply."

It is contended by appellant that the judgment of the court below should have been for it for the following reasons:

(1) The proof does not show that Federal Credit Company ever repossessed any cars and complied with the conditions alleged to have been necessary in order to establish appellant's liability to it on the contracts.

(2) The Bulk Sales Law does not protect one in dealing with appellant as a trader. Appellant sold notes and contracts to the Federal Credit Company and did not buy from anything.

(3) The Federal Credit Company was not a creditor of appellant when the bulk sale was made herein under Section 3353, Code of 1930.

We decide the case upon the ground of the third assignment, that on the date of the bulk sale here, appellee was not a creditor within the meaning of Section 3353, Code of 1930.

An analysis of the facts, as agreed to, and Exhibit "C" show that prior to the date of the bulk sale in this case, December 24, 1936, that the face value of the ten contracts here sued on was approximately $2037.56, and that of these ten contracts, six of them were not in default until long after the sale here in controversy. Ex-

hibit "C" undertakes to show the amount of the several contracts on the date of their execution, the number and the amount of monthly installments, when they were payable, when the first defaulted, and the balance due on each of them. This balance totaled the sum sued for.

The agreed statement of facts does not show whether the cars involved in the several contracts were repossessed or how or in what manner the Federal Credit Company exercised its contractual rights in order to create a liability against the Grant Motors, Inc., whether default demand was made for the payment of the entire balance due on the contract, or whether the cars were repossessed and sold or delivered to Grant Motors, Inc., or anything to indicate how the amount of the liability was arrived at.

Section 3353 invoked in order to establish liability against Gober, it being agreed that it was not complied with in any respect is as follows: "A sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business, and a sale of an entire stock of merchandise in gross, shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least five days before the sale:

"(a) The seller shall have made a full and detailed inventory, showing the quantity, and, so far as can be done by the exercise of reasonable diligence, the cost price to him of each article sold; and

"(b) The purchaser shall have in good faith made full and explicit demand of the seller for the name, place of residence and business and post-office address of each of his creditors, and the sum due each, and to which demand the seller shall have made full and truthful written answers; and

"(c) The purchaser shall have in good faith notified personally or by mail each of the seller's creditors, of whom he has knowledge, or with the exercise of reasonable diligence could have acquired knowledge, of the

proposed sale and of the cost price of the merchandise proposed to be sold and of the price to be paid therefor by the proposed purchaser.''

It is not alleged in the declaration that on the 24th day of December 1936, Grant Motors, Inc., was indebted to Federal Credit Company in any fixed sum whatever, nor was it capable of being ascertained at that date by anyone, and more especially by appellants. Each of the conditional contracts alleged to establish the liability here in suit was with a different purchaser due at a different date, each of the monthly payments differed from the other.

Whether or not there was a default at any time by said purchaser rested entirely upon the determination of the appellee, and the purchaser was at liberty to get extension of his contract or default therein at the will of the appellee. Demand upon Grant Motors, Inc., on the part of appellee was necessary and by implication likewise upon the vendee of the conditional sales contract with Grant Motors, Inc., to render appellant a debtor.

Again the appellee had the option to tender the car sold and demand payment of appellant by the repurchase of the car—it to pay therefor within a definite time the balance due on that specific contract as the purchase price, or another contingency that the appellee had in certain cases the right to demand the amount of fire insurance written on the car as its value, or if litigation arose between the appellee and the purchaser the appellant Grant Motors, Inc., was not indebted until the happening of other uncertain contingencies.

Under the rights of appellee, the appellant's liability might not ensue for many years.

On December 24, 1936, Grant Motors, Inc., could not have stated that any specific sum was then due by it to appellee, or that any sum to be fixed definitely then and there would become due. In other words, because of the many contingencies the seller could not have com-

plied with Section 3353, sub-section b, by rendering a statement to his purchaser that he at that time owed anything to the appellee.

In such a case, within the meaning of the statute, appellee was not a creditor of appellant.

Or, if we go further and hold the contingency alone would not relieve a debtor or purchaser under this statute, this contract shows on its face that the contingencies were so many and varied that the seller could not state that he owed any sum. The conditional contracts were subject to substantial changes every day, if not every hour, as to what amount was due on them or any of them, and this is true whatever definition might be given to the word creditor as used in this statute.

Our own authorities render no assistance, and we find none elsewhere sustaining appellee's view. The statute is strictly construed in all its application, including the word "creditors" as used therein. Whittington v. Yazoo Delta Mortgage Co., 148 Miss. 861, 114 So. 752. Whoever may be a creditor in a given case, we are content to say that the facts of this case demonstrate that appellee was not such a creditor as could have been listed by Grant Motors, Inc., because under the terms of the contracts it could not have been listed as a creditor to whom any certain sum was due or might have ever become due at the date of the bulk sale. The relation of debtor and creditor did not arise on the notes executed by the several vendees of Grant Motors, Inc., because they were endorsed by appellant without recourse.

There is involved in this case contingency upon contingency resting in the options of the Federal Credit Company as to whether or not and when the Grant Motors, Inc., became a debtor of appellee. It was not a fixed contingent liability. The authorities in other jurisdictions are in hopeless conflict as to whether one holding a fixed contingent liability against another can invoke the bulk sale statute as a creditor or not. We do

not align ourselves on that question as it is not necessary to a decision of the case.

The admission in the statement of facts cannot be construed into an agreement that on the date of the bulk sale Grant Motors, Inc., owed anything—as affecting Gober in the application of the statute to him. The court below erred as to Gober and no judgment should have been rendered against him.

Under the agreed statement of facts the judgment against Grant Motors, Inc., was correct.

Reversed and judgment here for Gober; affirmed as to Grant Motors, Inc.